IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CLAUDIA P. KREHBIEL,            )
                                )
            Plaintiff,          )
                                )
      v.                        )     1:08CV276
                                )
ROY COOPER, NORTH CAROLINA      )
ATTORNEY GENERAL, et al.,       )
                                )
            Defendants.         )
```

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

There are a number of pending motions in this case. First, Defendants move to dismiss the entire action for lack of jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(1), (5), and (6) of the Federal Rules of Civil Procedure. Plaintiff, in turn, seeks to cure the alleged defects in her complaint through (1) her second motion to amend the caption pursuant to Rule 15, and (2) her amended motion to add a necessary party and for leave to amend the verified complaint pursuant to Rules 7, 15, 19, and 21. However, as will be seen, all these motions are moot because of actions taken by the state court while this matter has been pending.

The pertinent facts are as follows. Plaintiff is the mother and sole physical custodian of "AP," a minor child. She shares legal custody of AP with the boy's father, Eduardo Ramierez Barreto ("Ramierez"), who resides in Colombia, and both are Colombian citizens by birth, as is AP. After Plaintiff and Ramierez

dissolved their relationship, Plaintiff moved to the United States, where she married and gained permanent resident status.[1] AP joined her in this country in 2002 and is also a permanent resident.

At the time the parties filed their pending motions, Ramierez and Plaintiff had long been involved in an action in North Carolina state court which sought to resolve various custody and visitation issues regarding AP. While certain issues, including custody, were ultimately resolved by consent order, the matter of visitation remained in dispute. Specifically, Plaintiff objected to AP's visiting his father in Colombia, or anywhere else outside the United States, on the ground that AP might be detained there by Ramierez or kidnaped by a third party.

In filing her present lawsuit under 42 U.S.C. § 1983, Plaintiff suggests that, in a child custody or visitation case involving a person who lives outside of this country, the federal government has the right and responsibility to determine the issue because federal immigration laws control the outcome and preempt state law. In particular, she alleges that a lengthy absence from the United States could potentially result in a change to AP's permanent resident status or prevent him from re-entering the country altogether. This could occur, according to Plaintiff, even if the child is kidnaped or otherwise forcibly kept outside the United States. For authority, she cites 8 U.S.C. § 1101(a)(3)(ii), which does not speak to a person being forcibly kept outside the

---

[1]Plaintiff and Ramierez were in a four-year relationship in the mid-1990s, but never married.

-2-

United States, but only a voluntary absence. Nevertheless, she seeks to permanently enjoin the North Carolina state courts from holding a hearing, trial, or entering any order which would direct AP to travel outside of the United States by contending that such an order would amount to "de facto deportation."

During the pendency of the parties' motions, the underlying state court case between Plaintiff and Ramierez was resolved without the issuance of "an objectionable" visitation order. Defendants now contend that this turn of events moots Plaintiff's federal claims since no actual controversy remains. Plaintiff counters that nothing precludes the issue of international visitation from being raised again in the future, and asks that this Court assert "the federal government's exclusive right to make immigration laws and regulations" by permanently enjoining the North Carolina state courts from issuing any such order.

Neither party has briefed the issue. Defendants seek to rely on their previously filed motion to dismiss. However, that motion argued the absence of jurisdiction based on the fact that there could be no case or controversy because the State had not yet ruled. But, of course, it now has issued a ruling. Plaintiff, on the other hand, offers no legal reason not to dismiss this action, but relies instead on conclusory, emotional appeals. Despite these deficiencies and as will be next discussed, the Court has an obligation to examine jurisdiction on its own whenever that issue presents itself, as it does here. For the reasons stated below, in the present circumstances, the mere possibility of a future order

-3-

concerning visitation does not constitute an actual controversy sufficient to provide this Court with jurisdiction to entertain the matter. This decision renders all of the parties' pending motions moot.

## **Discussion**

The doctrine of mootness arises out of the jurisdictional limitations of federal courts. As stated by the court in Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002):

> The Constitution limits the jurisdiction of federal courts to actual "Cases" or "Controversies." See U.S. Const., art. III, § 2, cl. 1. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (internal quotation marks omitted). The parties did not raise the issue of mootness, but the question of whether we are presented with a live case or controversy is a question we may raise sua sponte "since mootness goes to the heart of the Article III jurisdiction of the courts." Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 228 (4th Cir. 1997). "When circumstances change from the time the suit is filed to the time of appeal, so that the appellate court can no longer serve the intended harm-preventing function or has no effective relief to offer, the controversy is no longer live and must be dismissed as moot." County Motors v. General Motors Corp., 278 F.3d 40, 43 (1st Cir. 2002) (internal quotation marks omitted). Generally speaking, one such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim. See Broughton v. North Carolina, 717 F.2d 147, 149 (4th Cir. 1983) (per curiam).

In the present case, Plaintiff succeeded in preventing a visitation order to which she objected. For this reason, there is no live case or controversy. The matter is moot.

To the extent that there is a possibility that the controversy could arise again should the child's father seek modification of

-4-

the visitation order, that possibility is too slim a reed on which to support a federal lawsuit seeking to enjoin a future state court proceeding. Not only is there an insufficient live case or controversy to support Article III federal jurisdiction, but also the Court may, in its discretion, refuse to decide a case which has become moot. As stated by the treatise writers:

> Once the Article III threshold has been crossed, adjudication still may be refused on avowedly discretionary grounds. Remedial discretion is often relied upon to determine that the prospective benefit of an injunction, declaratory judgment, or other specific remedy is too slight to justify decision. Closely related concerns also are expressed through a concept of discretionary judicial administration that focuses on the importance of deciding or avoiding decision, and the need to conserve judicial resources.

13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3533.1 at 215 (2d 1984).

Because of the changed circumstances, the Court is effectively without remedial capacity to provide Plaintiff with any measured and reasoned relief. <u>See</u> <u>id.</u> § 3533.3. That is, Plaintiff fails to show any present effect or continuing impact arising from the source of Plaintiff's original concern. <u>Id.</u> Instead, Plaintiff seeks relief based wholly on an imagined future injury. However, this request is insufficient because Plaintiff would have the Court enter an injunction based on hyperbole, speculation, and fear run rampant. <u>Id.</u> These are hardly the bases for constructing any measured relief.

-5-

Some litigants have surmounted mootness problems by showing the controversy is "capable-of-repetition-yet-evading review." Id. To fall within this exception, two factors must be met:

> (1) the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there must exist a reasonable expectation that the same complaining party will be subjected to the same action again. Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975)(per curiam).

Kennedy v. Block, 784 F.2d 1220, 1223 (4th Cir. 1986).

In the instant case, Plaintiff makes no showing that her case meets the first factor, and her forecast regarding the second is highly speculative at best. Taking the second factor first, while it is theoretically possible that Ramierez may again, at some point in the future, petition the state courts for international visitation, there is both no factual basis shown as to why he would or how he could do so given the outcome in state court. As for the first factor, there is no reason to believe that the alleged federal issues related to that request could not be fully litigated at that time. Indeed, the Court notes that the recently resolved state court case between Plaintiff and Ramierez was originally filed in 2005, and Plaintiff did not file a federal action challenging the state court's jurisdiction until April 2008. In short, there is no "reasonable expectation" of future immediate harm as to warrant a decision by this Court at the present time.[2]

---

[2] Further, Plaintiff provides no guidance as to how this Court could craft an injunction to protect her son in the future, even if it were to find intervention appropriate, except by making a host of speculative assumptions
(continued...)

-6-

An additional reason not to enter the affray and enter a speculative injunction or declaratory relief lies in the very problematical nature of Plaintiff's request for relief. Her federal claim appears to be without merit. Plaintiff offers no authority for her contention that any visitation order directing her son's travel outside of the United States implicates federal immigration law and violates his federal rights under 42 U.S.C. § 1983. Plaintiff would have federal courts resolve all custody and visitation disputes when one party lives outside of the United States. Her claim of preemption is without any basis in law and she cites nothing on point to support her claim.

Issues involving the potential harm to a child as a result of a visitation or custody order generally falls squarely within the purview of the state courts, which have the requisite experience in the area of family law. The federal courts, in contrast, "are courts of limited jurisdiction and generally abstain from hearing child custody matters." Cantor v. Cohen, 442 F.3d 196, 202 (4th Cir. 2006) (citing Cole v. Cole, 633 F.2d 1083, 1087 (4th Cir. 1980)). Two exceptions to this rule, international child abduction and wrongful removal claims, are expressly covered by the International Child Abduction Remedies Act ("ICARA") and the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention"), neither of which applies in the present case. As the Fourth Circuit explains in great detail in Cantor, these

---

[2](...continued)
concerning the country where visitation would occur, the wishes of the child, and many other factors subject to variation with the passage of time.

statutes only come into play when a child has already been removed or retained in breach of custody rights. See 442 F.3d 196, generally. They do not address other aspects of a parent's access rights. See id. at 206 (noting that appellant could instead pursue her right to access her children by "filing a claim for visitation in state court under the state's visitation law").

In light of these holdings, it would appear that state courts are better suited to, and the proper venue for, considering the risks of kidnaping (parental and/or otherwise) or other dangers in the course of a *proposed* international visit. The state courts take these factors into consideration in deciding whether visitation is proper in the first place. Plaintiff's current speculation that any visit to places outside of the United States will, if long enough, deprive her son of reentry is far too speculative and tenuous to present a basis for this Court to involve itself in determining all of the visitation disputes of AP's parents. And, given the fact that a child grows and the circumstances of both the child and the parents may change through time, it would be rash for a federal court to enter an order now covering a future time based on a past controversy. Under these circumstances, the Court should be reluctant to entertain a controversy that has already ended and with only speculative likelihood that it will arise again in the same way. Accordingly, Plaintiff's claims merit dismissal for lack of jurisdiction both sua sponte and pursuant to Fed. R. Civ. P. 12(b)(1).

**IT IS THEREFORE RECOMMENDED** that this case be dismissed <u>sua sponte</u> for lack of jurisdiction, and that all pending motions be denied (except to the extent Defendants' motion to dismiss may be granted if it is read as requesting dismissal based on mootness) and that this action be dismissed.

                                          /s/ Russell A. Eliason
                                          **United States Magistrate Judge**

December 4, 2008